492 So.2d 538 (1986)
James W. MERCER and Brenda Mercer, Plaintiffs-Appellees,
v.
FRUEHAUF CORPORATION, Defendant-Appellant,
Fireman's Fund Insurance Company, Intervenor-Appellee.
No. 85-935.
Court of Appeal of Louisiana, Third Circuit.
July 23, 1986.
Rehearing Denied August 13, 1986.
Writ Denied November 7, 1986.
*539 Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Edward E. Rundell, Alexandria, for defendant-appellant.
Broussard, Bolton & Halcomb, Roy S. Halcomb, Jr., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOMENGEAUX, Judge.
This appeal arises following a jury verdict for the plaintiffs in a strict liability tort action. The plaintiffs, James W. Mercer and his wife Brenda, had alleged a defect in the walkboard located on top of the tank trailer from which Mr. Mercer fell. The worker's compensation insurer of Mr. Mercer's employer, Fireman's Fund Insurance Company, intervened; the intervention was submitted to the court on a stipulation of fact. Judgment was rendered in favor of the plaintiffs and intervenor. The defendant manufacturer of the tank trailer, Fruehauf Corporation, has appealed the jury's factual findings as to causation, the existence of a defect, and its award of damages to Mrs. Mercer. Fruehauf also contests several adverse evidentiary and procedural rulings by the trial court.
On December 9, 1982, James Mercer was employed by Perkins Industries as a truck driver. Mr. Mercer's occupation required him to load and unload the tank trailers which were used to transport various chemicals. *540 As part of the unloading process, Mr. Mercer had to open a hatch on the top of the tank trailer to allow him to vent the tank and survey its contents.
At about 9 o'clock at night, Mr. Mercer was finishing his final delivery run. To assure that his tank of formaldehyde had completely drained, Mr. Mercer climbed up on the trailer with the intent of visually inspecting the tank's interior through the hatch. Knowing the effect formaldehyde fumes could have on his eyes and lungs, Mr. Mercer took the precaution of standing on what he considered to be the up-wind side of the hatch. Balancing himself precariously on one foot, Mr. Mercer opened the 30 to 35 pound hatch with his other foot. Unfortunately, Mr. Mercer had misjudged the wind direction and the formaldehyde fumes hit him in the face.
It is at this point that the parties' version of the facts differ. The plaintiffs claim that to avoid the fumes Mr. Mercer turned and stepped onto the walkboard that runs along the top of the tank. As he stepped, his foot slipped on the walkboard surface and he fell a full 9 feet to the concrete below. The defendant, however, alleges that the victim, surprised by the fumes in his face, took a hasty step backwards, lost his footing, and fell to the ground. As already mentioned, the jury preferred the victim's story of causation.
The plaintiffs allege a defect of design in the walkboard. The walkboard is a metal plank approximately 12 inches wide and 6 feet long located on the top of the tank trailer. It operates as a work platform from where a worker can stand while performing his duties. The walkboard attached to the truck Mr. Mercer was operating was a flat, solid piece of metal to which a painted non-skid surface had been applied. The plaintiff alleged that this type of walkboard did not allow for drainage and thereby facilitated the buildup of foreign matter on its surface. Such a buildup reduced the effectiveness of the non-skid design. Additionally, since many of the chemicals hauled in a tank trailer are caustic, it was alleged that the non-draining walkboard trapped and held any chemical spillage which ate away at the painted-on non-skid surface.
The plaintiffs further maintained that a superior walkboard design was available to the defendant and actually used by Fruehauf Corporation on other tank trailers of its manufacture. This alternative walkboard was made of pierced and expanded metal. It is constructed by punching holes from the bottom of a solid metal plank. As the punch passes through the metal, much like a pencil being pushed through a piece of paper, the edges of the hole are pushed upward, leaving a saw tooth metal surface around each hole. The plaintiffs claimed that this walkboard design is superior to the one which caused Mr. Mercer's fall in three respects: (1) the perforated surface allows drainage of foreign matter; (2) the saw tooth edges around each hole provide a permanent non-skid surface which will not deteriorate or be eaten away by caustic materials; (3) the pierced metal creates a raised surface which bites into a worker's shoe to provide better traction.
The defendant denied liability in the court below, maintaining that its walkboard was not defective and, even if it was, the defect was not the legal cause of Mr. Mercer's fall. The jury found that the defendant's walkboard was defective and that the defect, not the victim's negligence, caused the fall. Fruehauf Corporation appealed.

ASSIGNMENT OF ERROR NO. 1
The trial judge erred by admitting prejudicial photographs into evidence without proper foundation and over defendant's objection.
In its first assignment of error the appellant complains that the trial court erred in admitting photographs of the allegedly defective walkboard which were taken almost a year after Mr. Mercer's fall. The appellees contend that since the jury was informed of the factual circumstances surrounding the pictures, any discrepancy between the condition of the walkboard on December 9, 1982, and its condition a year *541 later went to the weight of the evidence rather than to its admissibility.
"It is well settled that in order for photographs to be admissible, it need only be shown that a photograph depicts what it purports to depict. Derouen v. Department of Transportation and Development, Office of Highways, 392 So.2d 765 (La.App. 3rd Cir.1980) and cases cited therein. Further, the fact that there are differences or changes in the conditions does not necessarily exclude a photograph where the changes and differences are explained. See Messex v. Louisiana Department of Highways, 302 So.2d 40 (La.App. 3rd Cir. 1974)."
Bico Enterprises, Inc. v. Cantrell, 413 So.2d 260 (La.App. 3rd Cir.1982).
In the present case, although Mr. Mercer could not specifically recall what the offending walkboard looked like on the night of the accident, he testified that he was present when the photographs were taken and that they accurately depicted what the tank trailer looked like in December of 1982. Further, the jury was made aware of the time lapse of approximately one year between the accident and the photo session. To aid the jury in its evaluation of the evidence, the plaintiffs' expert in mechanical engineering admitted that if the walkboard had not been subject to maintenance procedures following the accident, the non-skid surface would have deteriorated prior to the time the photographs were taken.
In view of the above-recited testimony, we feel the requisites to admissibility outlined in Bico Enterprises have been met. Therefore, the appellant's first assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The trial judge erred in his refusal to qualify one of defendant's witnesses to testify as an expert.
"The qualification of a witness as an expert by the trial judge lies within the wide realm of the trial judge's discretion, and that determination will not be disturbed on appeal absent a showing of manifest error." (Citations omitted). Bateman v. Power Rig Rental Tool Company, 453 So.2d 998 (La.App. 3rd Cir.1984). The appellant claims in this assignment of error that the trial judge abused his discretion to the point of committing manifest error when he refused to qualify Mr. James Eicher as an expert witness in the area of design and manufacture of tank trailers.
Mr. Eicher, an employee of Fruehauf Corporation for 23 years, had started with the company as a draftsman and had worked his way up to the position of Chief Engineer. However, Mr. Eicher held no college degree in engineering or any other field; neither was he licensed as any kind of engineer. Based on his practical and technical experience, Mr. Eicher had been qualified in state and federal courts as an expert in the area of design and manufacture of tank trailers approximately 8 to 10 times. Although it may be arguable that Mr. Eicher should have been allowed to testify as an expert, we cannot definitely state that the trial judge abused his great discretion in refusing to qualify the witness as an expert.
We note that Mr. Eicher ultimately took the stand on behalf of the appellant and testified concerning the design and manufacture of Fruehauf's tank trailers. Mr. Eicher was asked for and gave his opinion several times during his direct examination. Therefore, we find that even if the trial judge had committed manifest error in refusing to qualify Mr. Eicher as an expert witness, the error would not have been prejudicial to the appellant and, hence, not reversible.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The trial judge erred in his refusal to permit the defendant to call a representative of the intervenors on cross-examination.
At trial, the defendant-appellant called a representative of the intervenor, Fireman's Fund Insurance Company, and attempted to interrogate him under cross-examination. *542 The plaintiffs' attorney objected on the grounds that the representative was not an "adverse party" as contemplated by La.C.C.P. Art. 1634 which regulates cross-examination. The plaintiff argued that inasmuch as the issues involved in the intervention had been submitted to the judge on a stipulation of fact, the intervenor was not an "adverse party" in the portion of the case which was before the jury.
We find this technical distinction in the definition of "adverse party" for purposes of cross-examinations to be without merit. As long as the worker's compensation insurer was a party who stood to gain from a judgment adverse to the defendant, it is an "adverse party" under La.C.C.P. Art. 1634, regardless of whether the issues inherent in the intervention were presented to the trier of fact.
Because we find error in the trial court's refusal to allow the cross-examination of the intervenor's representative, we have considered the effect of that error on the trial court's judgment and have found it to be harmless. First, we find the following statements in Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370 (La. App. 1st Cir.1981), writ denied, 401 So.2d 988 (La.1981), to be equally applicable to the case before us:
"[A]n offer of proof would be proper when the trial judge refuses to allow the testimony of a witness called under cross examination, and it would be error to deny such a proffer. However, no offer of proof was attempted in this case. Since [defendant] failed to avail [itself] of the opportunity to make an offer of proof, as he is entitled to do under La.C. C.P. art. 1636, he cannot complain on appeal. Carroll v. Guillot, 337 So.2d 310 (La.App. 3rd Cir.1976)."
Second, since the appellant has not claimed that the trial court's ruling prejudiced its defense in any specific way, we find that the erroneous procedural ruling of the trial judge did not affect the outcome of the case and is therefore harmless.

ASSIGNMENT OF ERROR NO. 4
The trial court erred in its allocation of time for closing argument.
The appellant claims that the trial judge committed reversible error in allowing the plaintiffs fifteen minutes more time than the defendant for closing arguments. The disparity occurred when the trial judge alloted plaintiffs' counsel thirty minutes for closing argument plus an additional fifteen minutes for rebuttal; defendant's counsel was restricted to thirty minutes altogether.
Our review of this alleged error is limited to the issue of whether the trial judge abused the great discretion afforded by his power to control proceedings at trial. La. C.C.P. Art. 1631 and 1632; Temple v. Liberty Mutual Insurance Company, 330 So.2d 891 (La.1976). Although we are not convinced that the lower court's procedure was proper in this case, the result is neither significantly prejudicial to the appellant nor an abuse of the trial judge's discretion. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
The trial judge erred in his refusal of defendant's requested jury charges.

A. Comparative negligence.
The appellant maintains the trial judge committed reversible error in declining to instruct the jury on the issue of Mr. Mercer's negligence. As will be explained in detail below, we believe the trial judge was correct in refusing to submit the issue of comparative negligence to the jury.
In a case involving the strict liability of a manufacturer, ordinary contributory negligence will not bar the plaintiff's recovery, although it may reduce his award under some circumstances. Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La.1975).
"According to Bell, whether comparative fault is applicable as a defense in products liability cases must be determined in light of the policy considerations which form the basis of the products liability *543 doctrine. The Supreme Court stated in Bell:

`Where the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those types of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacture's incentive to make a safer product.'"
Lanclos v. Rockwell International Corp., 470 So.2d 924 (La.App. 3rd Cir.1985), writ denied, 477 So.2d 87 (La.1985), citing Bell v. Jet Wheel Blast, Division of Ervin Industries, supra.
In the case before us, the defendant argued causation (i.e., product design defect versus victim negligence) to the jury, and lost. Inasmuch as the jury believed that Mr. Mercer's step onto a slippery walkboard caused his fall, we fail to see how the application of comparative fault principles would further user caution and safety. Additionally, since the jury found a defect in the design of this particular walkboard, a reduction in the plaintiffs' award due to victim fault would seriously reduce the manufacturer's incentive to switch completely to the alternative pierced metal walkboard. For these reasons the trial judge committed no error in his refusal to charge the jury concerning comparative negligence.
B. Duty to maintain and duty to warn.
The appellants also cite as error the failure of the trial judge to charge the jury concerning the owner's duty to maintain and the manufacturer's duty to warn. We find no error. As to the maintenance argument, the trial court instructed the jury that part of the plaintiffs' burden included proof that the defective condition of the product which allegedly caused the injury must have "existed at the time the product left the control of the manufacture,...." Trial Judge's jury charge. Secondly, the one charge which referred to the manufacturer's duty to either warn of or remove a danger was a correct statement of law and applicable to the case at bar where the plaintiffs' petition alleged inadequate warnings, and this even though the issue was never litigated at trial.
The appellant's fifth assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
The majority of the jury erred in finding as a matter of fact that the defendant's tank trailer was defective.
A. Defect.
This assignment questions a finding of the trier of fact. Therefore, our review is limited to determining whether that finding is clearly wrong or manifestly erroneous. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Watson v. State Farm Fire & Casualty Insurance Company, 469 So.2d 967 (La.1985).
Although the defendant established at trial that there were some situations where a non-skid surface was superior to a pierced metal walkboard and that both designs required some degree of maintenance, there was ample competent evidence to convince the jury that the non-skid walkboard at issue in this case was defective. For example, the plaintiffs' expert who held a Master's Degree in mechanical engineering, opined that the walkboard from which Mr. Mercer fell was unreasonably dangerous for normal use. More significantly, two of the defendant's witnesses were aware of the shortcomings of the walkboard design and further admitted that the defendant had discontinued manufacturing this type of walkboard over a year before Mr. Mercer's fall. Some of the factors leading to the discontinuance were customer preference and safety.
Based on the above recitation of facts presented to the jury, we can find no manifest error in the finding of a defect.
*544 B. Causation.
As earlier explained, the appellant has contended that even if there was a defect in the walkboard, which is denied, the defect was not a legal cause of Mr. Mercer's fall and resulting injuries. This is a case where there are no eye witnesses to the accident and the victim's word is countered only by the defendant's speculation. In other words, a factual determination as to causation rests squarely on the issue of the victim's credibility.
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable."
Canter v. Koehring, supra.
After a thorough review of the record, we find no error in the jury's finding of causation.

ASSIGNMENT OF ERROR NO. 7
The majority of the jury erred granting plaintiff an excessive damage award.
In this assignment the appellant first complains that the jury abused its much discretion in awarding Mrs. Mercer the sum of $25,000.00 for loss of consortium. Our review as dictated by Reck v. Stevens, 373 So.2d 498 (La.1979), is commenced by an independent evaluation of whether the award was excessive in relation to the facts of the case.
Mrs. Mercer's testimony established that after her husband's accident and before his surgery, Mr. Mercer required her assistance in almost every aspect of his daily life. Indeed, Mr. Mercer had days when he simply couldn't walk. On the days when Mrs. Mercer went to work, the children (approximate ages 10 and 13 years) would have to stay home to attend to their father. After his surgery, Mr. Mercer's condition improved somewhat, only to deteriorate again to the point of requiring assistance, even to the date of trial. Although the back surgery was a necessary evil, Mrs. Mercer testified that it caused her much worry, for fear of potential paralysis. During surgery and hospitalized recovery Mrs. Mercer stayed with her husband at the hospital. Mr. Mercer's injuries have further caused disruption in the family's life because of his inability to enjoy habitual family outings at "the creek".
Mrs. Mercer's testimony describes a significant change in the lifestyle of herself and her children due completely to the injuries sustained by Mr. Mercer. For that reason we cannot say that the award of $25,000.00 was excessive.
Secondly, the appellant contests the award of an expert witness fee in the amount of $250.00 for the testimony of Dr. Grover Bahm. The record reveals that Doctor Bahm did not testify, by deposition or at trialhis medical reports were merely read into the record. Inasmuch as expert witness fees are awarded for time spent testifying and attendant research and preparation, we agree with the appellant that no fee is due.
For the above and foregoing reasons the award of $250.00 as an expert witness fee for the testimony of Doctor Bahm, which was assessed as costs, is reversed. In all other respects the judgment of the district court is affirmed. Costs on appeal are to be borne by the appellant.
AFFIRMED AS AMENDED.