535 So.2d 568 (1988)
Thomas H. HAYES, Jr., et al[1], Plaintiffs-Appellants,
v.
Andrew McFARLAND, et al, Defendants-Appellees.
No. 87-1102.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
Richard Starling, Pineville, for plaintiffs-appellants.
Gist, Methvin, James Reichman, Alexandria, for defendants-appellees.
*569 Before STOKER, LABORDE and KING, JJ.
LABORDE, Judge.
Plaintiff, Thomas Hayes, Jr., was injured when he was bitten by a dog owned by defendant, Andrew McFarland. Hayes filed suit against McFarland and his insurer, Hartford Insurance Company. Hayes' wife and his two children also sued defendants seeking damages for loss of consortium, society and services. Trial was held and the jury found that Hayes' own fault was the sole cause of his injuries. Thus all claims for damages were denied. The plaintiffs now appeal, asserting that the jury's verdict was erroneous. We affirm.

FACTS
On March 9, 1986, Thomas Hayes, Jr. and his minor daughter were passengers in a car being driven by his brother, John. They were returning from Alexandria to plaintiff's home in Otis, Louisiana. At the time, Thomas and John were drinking beer. En route to Otis, their vehicle passed the home of Andrew McFarland, who was an acquaintance of plaintiff's. Plaintiff saw McFarland in the yard and instructed his brother to park the vehicle in front of McFarland's home. McFarland's yard is enclosed by a six foot high chain link fence with a "Beware of Dog" sign attached to the driveway gate. Behind the fence were McFarland's two dogs, Diablo, a German shepherd, and Bandit, a pit bulldog. Plaintiff exited the vehicle and approached the gate. The dogs barked at him. He saw McFarland proceed to put Diablo on a chain at the rear of the house. Plaintiff contends that he believed the "Beware of Dog" sign only referred to Diablo. So he opened the gate and entered the yard. As he did so the female pit bull, Bandit, jumped on him ("not really angrily") and knocked his watch off. He then stomped his feet on the ground apparently yelling "get back bitch." He then stared into the dog's eyes. Plaintiff testified that Bandit looked different than he remembered. Bandit sat on her haunches growling at plaintiff. Plaintiff again stomped his feet and told the dog to get away. Plaintiff stared at the dog a little while longer and then turned away and bent over to pick up his watch. As he did so, Bandit attacked, biting plaintiff's right arm and leg. Plaintiff was able to get outside of the fence and McFarland brought him inside the house to clean his wounds. Plaintiff then proceeded to an Alexandria hospital where he remained for five days.

STRICT LIABILITY
La.C.C. art. 2321 provides:
"The owner of an animal is answerable for the damages he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."
This article has been interpreted to mean that when a domesticated animal harms another, the master of the animal is presumed to be at fault. He is strictly liable. Holland v. Buckley, 305 So.2d 113, 119 (La.1974). The owner may only exculpate himself if he can prove that the harm resulted from some independent cause not imputable to the defendant (i.e., prove that the harm was caused by victim fault, fault of a third party for whom the owner is not responsible, or by a fortuitous event). Id. In using victim fault as a defense to a strict liability action under art. 2321, Louisiana courts have held that the fault must rise to the level of causing the accident before it will bar recovery by the plaintiff. Rozell v. Louisiana Animal Breeders Co-op, 496 So.2d 275, 279 (La.1986).

COMPARATIVE FAULT
In Howard v. Allstate Insurance Company, 520 So.2d 715 (La.1988), the Louisiana Supreme Court recently considered the applicability of Louisiana's comparative fault provision (art. 2323) to strict liability cases arising under art. 2321.
*570 Howard involved a dog bite situation similar to the present. The defendants kept their German shepherd, Nick, inside of a fenced area. To reach Nick, one had to go through a first gate which displayed a "Beware of Dog" warning and then through a second gate with no such warning. The plaintiff was an 11 year old girl who lived across the street from defendants. Defendants' 7 year old daughter invited plaintiff and her younger brother and sister to play on a swingset located inside of the same fenced area as Nick. Defendants' daughter claimed to have told the other children to wait to enter the yard until her parents could put Nick in a pen. The other children, however, claimed that the girl only told them that Nick would not bite. Plaintiff entered the yard, was attacked by Nick, and suffered severe facial lacerations.
The Howard court first pointed out that Rozell involved an injury sustained prior to the enactment of the comparative fault provision. The Howard court held:
"In view of the foregoing statutory and case law, we hold that comparative fault applies in cases such as this where a domesticated animal inflicts injuries for which its owner is held liable under art. 2321. It seems only fair that the damages recovered by negligent victims in dog bite cases should be reduced by their percentage of fault."
Id. at 718-719. The court did note the difficulty of applying comparative fault to a strict liability situation:
"However, there is a problem with applying comparative fault to a strict liability case. Strict liability is based on a theory of responsibility which requires no finding of negligence. The `fault' of the defendant does not involve blameworthiness or culpability. The theory of strict liability does not lend itself to a comparison of culpability. If a defendant liable under a strict liability rule can mitigate damages by showing the plaintiff's negligence, then the plaintiff will be forced to show the defendant's culpability in order to lessen by comparison his own. This inappropriately reintroduces the element of negligence into a strict liability action. There is also the conceptual difficulty of comparing the two types of legal fault. We agree with the court of appeal that the most satisfactory result to this problem seems to be the principle of comparative causation. Under this principle, the factfinder compares the causal effect of the plaintiff's conduct with that of the defendant's nonegligent fault."
Id. at 719.
The court then stated that the proper measure to use in apportioning the loss sustained is the extent to which each party contributed to the damages. The court then apportioned 90% of the fault to the defendant and 10% to the plaintiff.
In the present matter the trial judge issued a special verdict form with interrogatories addressed to the members of the jury. Interrogatory # 1 asked if the jury found that McFarland owned Bandit and if Bandit bit plaintiff. Interrogatory # 2 asked if plaintiff's conduct was the sole cause of his injuries (victim fault). The interrogatory further stated that if the answer was "Yes," then there was no need for the other interrogatories to be answered. Interrogatories # 3 and # 4 asked the jury to apportion the fault attributable to plaintiff and defendant. The jury answered "Yes" to interrogatories # 1 and # 2 and thus did not apportion any fault to defendant. It is clear from these interrogatories that the jury was given a chance to apply the principles of comparative fault (or comparative causation) to the facts presented at trial. In doing so, they found plaintiff's fault to be 100%. It is this finding that plaintiff contends is erroneous.
Plaintiff contends that he believed that Diablo was the only one of defendant's dogs with dangerous propensities. He claims to have entered the premises several times while Bandit ran free and had never had problems with the dog before. He also apparently claims that even if his actions in stomping his feet, etc. are considered as having provoked the dog, then they should only be considered as provocation for the first bite and not for the second and third *571 bites which immediately followed. Plaintiff also points to omissions made by the defendant which he contends should be considered as fault. He claims that the defendant was at fault by not keeping both dogs chained up inside of the fence at all times. He also claims that the dogs should have been muzzled at all times. He finally contends that defendant should have kept the gate locked at all times.
Defendant testified that he kept both dogs penned up inside of a six foot high chain link fence with the warning "Beware of Dog" posted on the gate.[2] Defendant testified that, whenever he had guests, he always advised them not to enter the gate until both dogs were chained. He stated that he told plaintiff this immediately prior to the attack and had told him so on at least one prior occasion. Defendant stated that he did not chain both dogs at the same time because he was unable to handle both as he has an artificial hip. Defendant testified that after the attack plaintiff told him: "I thought I could bluff the dog. I knew better...."
John Woodman, defendant's former neighbor, testified that he always waited for both dogs to be chained up before he entered defendant's yard and that he had never entered the yard when the dogs were not chained. Woodman also testified that he had been at defendant's home sometime around August, 1985. On that date plaintiff was also a guest at the home. The dogs were both chained. He stated that as plaintiff was about 15 feet from the dogs, plaintiff threw a beer can in the direction of the dogs, stomped his feet at them, and yelled at them. Kenneth Gandy, a good friend of defendant, also testified. Gandy testified that every time he went to defendant's home, defendant told him to wait until both dogs were chained before entering the yard. He stated that he always waited. He too related the incident where plaintiff threw the beer can toward the dogs. Gandy also remembered a time around May, 1985 where plaintiff approached the chained dogs slapped his pants legs, clapped his hands and yelled at them. Defendant also recalled the two prior incidents of plaintiff teasing the dogs.
The jury apparently weighed the evidence presented by each side and concluded that the testimony presented by the defendant was more credible. The jury's verdict is presumed to be correct and the burden is on the appellant to show manifest error therein. Deville v. Aetna Insurance Company, 191 So.2d 324, 325 (La.App. 3d Cir. 1966), writ denied, 250 La. 13, 193 So.2d 527 (1967). After a thorough review of the record, we cannot find the jury's determination that plaintiff was 100% at fault to be erroneous. Plaintiff approached defendant's yard while a German shepherd and a pit bull barked at him. He had been drinking. He walked to a gate with a "Beware of Dog" sign posted on it. He was warned by defendant not to enter the yard until both dogs were chained. Not heeding the warnings, plaintiff entered the yard. His watch was knocked off. He attempted to scare Bandit away by yelling, stomping his feet, and staring into her eyes. As the dog sat on her haunches growling at him, plaintiff turned away from the dog and bent over to pick up his watch. Then he was attacked.
Defendant is strictly liable under art. 2321. However, as found by the jury, this liability was reduced (rebutted) by plaintiff's own fault. After reviewing the record we can find no other actions on the part of defendant that contributed to the plaintiff's damages (no other causal effect of defendant's actions).
Defendant kept his dogs inside of a six foot high chain link fence with a "Beware of Dog" sign on the gate. He always warned visitors not to enter the gate until both dogs were chained. Defendant did not keep the dogs chained unless guests were at his home. He did not keep the dogs muzzled. We do not find these omissions to be fault on defendant's part. Plaintiff contends that, by not locking the gate, defendant created a risk that children *572 would wander in and be attacked by the dogs. Although there are potential situations where this could possibly be considered as some type of fault on the part of defendant, we do not find that to be the case here. Plaintiff was 29 years old at the time of trial, was aware of the "Beware of Dog" sign, heard the dogs barking, yet entered the yard anyway. A child may have an excuse for entering the yard; plaintiff does not.
For the foregoing reasons we affirm the jury's verdict finding plaintiff to be 100% at fault and denying any damage claims in this matter by him or his family members. Costs of this appeal are taxed to plaintiff.
AFFIRMED.
NOTES
[1] Plaintiff died subsequent to the filing of this suit. His widow, Darlene Jane Scroggs Hayes, has been substituted as party plaintiff.
[2] Plaintiff admitted that he had seen the sign on previous occasions and had walked past it on the instant date.