WARD, Judge.
Patrick Wheeler appeals a $10,000 jury award in his personal injury suit against New Orleans Public Service, Inc. (NOPSI). We affirm the judgment of the lower court.
Patrick Wheeler, a New York resident, came to New Orleans in May 1986 to attend a bookseller’s convention. While sightseeing in the French Quarter with his friend, Jane Holland, Wheeler allegedly injured his back when he slipped and fell on a rain-slick NOPSI manhole cover installed in a sloping driveway on Burgundy Street. In addition to NOPSI, Wheeler named the City and Randy Powell and Joseph Parrino, the owners of the Burgundy Street property, as parties-defendant; however, the owners were dismissed upon a motion for summary judgment while the City prevailed upon a motion for directed verdict.
The jury awarded Wheeler $20,000 for his medical bills and pain and suffering but assigned 50% fault to him. The Court entered a judgment of $10,000 in Wheeler’s favor together with legal interest and costs.
Wheeler appeals advancing six assignments of error.
The first assignment argues Trial Court error in admitting into evidence the depositions of Randy Powell and Joseph Parrino, the owners of the property on which the manhole sat. The depositions were taken by Wheeler. Specifically, Wheeler complains the depositions are inadmissible because the requisites of C.C.P. art. 1450 had not been met to prove the unavailability of Powell and Parrino for trial.
*1239 Wheeler contested the admissibility of the depositions on the first day of trial pointing out that NOPSI had not subpoenaed the presence of these witnesses within the time allotted by the lower court’s pre-trial order. Wheeler prevailed on this argument and NOPSI applied to this Court for supervisory writs (89-C-1211). We granted writs stating:
Defense counsel’s technical violation of the Trial Court’s Pre-Trial Order should not result in exclusion of admissible evidence at trial in this instance. If the depositions meet the requirements of La. C. C.P. art. 1450, they are admissible. (emphasis added)
When the issue of the admissibility and relevancy of the depositions came before the Trial Court a second time, the Trial Judge overruled Wheeler’s objection, admitted the depositions and stated:
The irrelevancy, inadmissibility, all of those things were addressed in the Writ ... I think I must follow their [Court of Appeal’s] directive.
The Trial Judge erred both in his interpretation of this Court’s writ directive and in admitting the depositions.
We find no admissible evidence that NOPSI proved the unavailability of Powell and Parrino for trial. The record reflects that in the in-chambers discussion NOPSI’s counsel informed the Judge, over Wheelers’ objection of hearsay, that one of Parri-no’s employees advised him both Parrino and Powell were in Jamaica. Counsel did not produce the employee nor did he offer any documentary evidence to support the employee’s admittedly hearsay statement. There is evidence in the record that NOPSI requested trial subpoenas for both Parrino and Powell; however, there are no returns on the subpoenas nor anything in the record to indicate the Sheriff ever attempted service.
It is clear under Louisiana jurisprudence that hearsay evidence may not be considered in the judicial inquiry as to unavailability. Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La.App. 4 Cir.1975).
In McKinley v. Dalton, 355 So.2d 1033 (La.App. 4 Cir.1978) this Court quoted from 26 A C.J.S. Depositions § 92(2)(bb) in part:
The absence of a witness may not be shown by one who can speak to that fact only from hearsay. It is sufficient to show that a reasonable effort has been made to serve the deponent with a subpoena, that inquiry has been made at his usual place of business or abode and that letters have been received from him from another state of [sic] county.
⅝ ⅝ sfc ⅝ ⅜: ⅝
On the other hand, the mere issuance of a subpoena or attachment or its return not served because the witness could not be found, or mere statements on the part of deponent, are not sufficient to allow the introduction of a deposition in evidence, when any uncertainty as to the deponent’s whereabouts exists. 355 So.2d 1033, 1935.
Although the trial court erred we do not agree that the Court’s action amounted to prejudicial error. Wheeler strenuously maintains that the gist of Powell’s and Parrino’s deposition testimony—that they had never seen nor heard of anyone else falling on the manhole cover—led the jury to conclude that Wheeler somehow caused his own fall. We do not agree.
One of the interrogatories posed to the jury read: “Do you find that the manhole cover created an unreasonable risk of harm to others?” Nine of the 12 jurors responded affirmatively, indicating that Wheeler was not the sole cause of the accident. There was other evidence including Wheeler’s testimony to show Wheeler’s own fault, and we think it reasonable to conclude that the jurors were not solely influenced by the contents of the depositions. As a matter of fact the record even without the depositions fully supports a finding of Wheeler’s fault, but this will be discussed below in more detail.
Wheeler’s second assignment of error attacks as erroneous the Court’s jury charge on plaintiff’s comparative negligence. The charge in question reads:
*1240 In determining percentages of fault, you should consider the conduct of all parties. In assessing these percentages you may consider whether a party knew of the danger and the amount of the danger, the reason for the conduct, and the ability of the parties to control their conduct.
Wheeler maintains the charge did not instruct the jury to compare causation but rather to compare culpability by directing the jury to consider the parties’ knowledge of the danger and conduct in light of that knowledge, contrary to the directive of Howard v. Allstate Ins. Co., 520 So.2d 715 (La.1988). The Howard case cites Watson v. State Farm Fire and Cas. Ins., 469 So.2d 967 (La.1985) in which the Louisiana Supreme Court cited with approval the Uniform Comparative Fault Act, Section 2(b), which provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed, (emphasis added.) Howard, supra at p. 719.
We find the charges of the Trial Court meets the requirements of Howard and Watson.
Wheeler’s next assignment argues that the jury did not cast the requisite number of votes to properly render a verdict on damages. C.C.P. art. 1795.
The interrogatory addressing the damage issue was broken down into six categories: medical bills, past earnings loss, future earnings loss, pain and suffering, mental anguish and permanent disability. The jury voted 9-3 to award medical bills of $10,000 and damages for pain and suffering of $10,000, but left blank the remaining categories. Wheeler maintains there was some question in the proceedings whether the jury intended not to award damages in the remaining categories or whether they believed the Judge would fill in the blanks. Wheeler states that the foreman took it upon himself, without the assent of the requisite nine jurors, to put zeroes in four of the spaces. In any event, at Wheeler’s request the Judge polled the jury on the interrogatories. The Court read the interrogatory with blank spaces for past earnings loss, future earnings loss, mental anguish and permanent disability, and nine of the twelve said they voted “yes” to the interrogatory as read by the Court. None of the nine made any objection to the blanks; nor did counsel object to the manner of polling or move for a mistrial.
Two months after rendition of judgment, Wheeler unsuccessfully moved for a new trial. Wheeler argues that the verdict is invalid, relying on Weber v. Caterpillar Machinery Corp., 542 So.2d 544 (La.App. 5 Cir.) writ denied 548 So.2d 332, 334 (La.1989); Landry v. St. Charles Inn, Inc., 446 So.2d 1246, 1252 (La.App. 4 Cir. 1984); and Brown v. Schwegmann Giant Supermarkets, Inc., 535 So.2d 1307, 1309 (La.App. 5 Cir.1988), writ denied, 538 So.2d 595 (La.1989). These cases, however, are distinguishable. The lack of the requisite number of votes was apparent on the face of the proceedings in those cases at the time the individual jurors were polled. This is not the situation in the instant case. The jurors were polled, and nine out of the twelve unequivocally answered “yes” to the interrogatory as read by the Court.
At the hearing on Wheeler’s motion for a new trial, Wheeler elicited testimony from two of the nine jurors who originally voted “yes” to the damages interrogatory during the polling of the jury. Their testimony was so vague and uncertain in their recollection concerning the trial and deliberations, it cannot be concluded they did not agree with the verdict. It was, however, clear during the motion hearing that no outside influences came to bear on the deliberations. C.E. art. 606(B).
Wheeler has not proved that the jurors did not cast a valid vote. The Trial Judge instructed the jury no less than two times prior to deliberation of the necessity of nine votes to render a verdict and the jury’s duty to fill in all blanks. Moreover, during deliberations, the jury specifically questioned the Judge concerning the neces *1241 sity of nine votes to which the Judge replied:
Right. On every question it takes nine to say anything. If you don’t have nine, you have to stay and fight it out until you get nine. One way or the other you have to come back and tell me there's no way in the world we can reach a verdict, and after I make you deliberate through tomorrow I declare a mistrial and start over.
At no time after this exchange during deliberations did the jury advise the Court of any problem or inability to render a verdict.
Next, Wheeler raises the issue of the correct standard of appellate review in this case. Because he maintains trial court error in admitting the depositions, improper jury instructions and confusion by the jury in rendering its verdict, Wheeler argues that the manifest error standard is inapplicable and that this court must make an independent review of the record and determine a preponderance of the evidence, citing among other cases, Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985) in support of his position. However, our rulings on the previous assignment negates this position.
Alternatively, Wheeler contends that if this Court finds, and we do, that the proceedings below are entitled to a presumption of regularity, the jury committed manifest error, abusing its discretion in finding Wheeler at fault in any degree and in awarding damages below the lowest amount justified by the circumstances of his case. Consequently, Wheeler ascribes his two final assignments of error to fault and the issues of quantum.
Wheeler offered the testimony of Dr. Frank Griffith, a physicist, who conducted friction tests on the manhole cover re-creating the conditions present on the day Wheeler allegedly fell. Dr. Griffith’s tests concluded that the surface of the manhole cover fell below scientific standard considered a safe walking surface. Wheeler’s other two experts, a civil engineer and a safety consultant both concluded that the physical location and design of the manhole cover presented a hazard to pedestrians.
Conversely NOPSI’s expert, Joseph Gavin, an electrical engineer employeed by NOPSI as Division Network Superintendent explained to the Court the purpose of and criteria employed for the placement of manholes/covers. His testimony revealed the manhole cover in question was designed for pedestrian traffic in that the cover was made of “mild steel with protuberances or ridges ... which are designed to prevent slippage.”
Wheeler argues, and the jury agreed, the foregoing testimony proved that the manhole cover created an unreasonable risk of harm. He argues further, however, that considering the weather conditions coupled with the foregoing facts leads to the inescapable conclusion that the sole cause of his fall was the hazardous condition of the cover, ergo, the jury erred in assigning any percentage of fault to him. The jury thought otherwise.
One of the charges given the jury read: A pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances.
Wheeler contends the rainy condition caused the cover to blend into the sidewalk; however he also admitted his attention to the sidewalk was distracted by his sightseeing. Therefore, we do not think it manifestly erroneous for the jury, when considering the jury charge coupled with Wheeler’s testimony, that he was negligent and partially responsible for his fall. See Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1 Cir. 1983), writs denied, 433 So.2d 1057 (La.1983). We find no error in the jury’s assessment of fault.
The last issue for review raised by Wheeler concerns the jury’s damage award. Wheeler strenuously contends that the jury’s failure to compensate him for four elements of damage is an abuse of their “much discretion,” and the award must therefore be increased.
*1242 The jury viewed the videotaped depositions of Wheeler’s physicians,,Drs. Ronald Grossman, Govindan Gopinathan and Charles A. Franchino.
Dr. Grossman, a New York internist, testified Wheeler first contacted him on June 4, 1986 for an irritating cough with no mention of a fall, leg or back pain at that time. Six days later Wheeler again contacted Dr. Grossman’s office with complaints of severe low back pain which Wheeler attributed to a combination of coughing and mild exercise. Not until July 9, 1986 did Wheeler inform Dr. Grossman he suffered a fall while traveling. During this call, Wheeler told Grossman he had been seeing Dr. Franchino, a chiropractor since June 10, 1986. In a July 7, 1987 report Dr. Grossman noted Wheeler’s condition stating: “Over the course of three months he made a gradual recovery from the back pain and returned to full activity. When last examined on April 23, 1987, he was free of pain ...” Dr. Grossman did not hear from Wheeler again until February 20, 1988, three days prior to Dr. Gross-man’s deposition, at which time Wheeler said he had daily back pain.
Dr. Franchino related that in the history elicited, Wheeler denied any previous illnesses or back injuries and advised Dr. Franchino that he suffered a fall in May 198Ó. Dr. Franchino saw Wheeler approximately 13 times between June and July 11, 1986 during which time Wheeler experienced some pain but his overall condition was improving. Dr. Franchino did not believe Wheeler suffered a herniated disk but did say while “permanent injury” was the wrong term to apply in Wheeler’s case, he (Wheeler) would nonetheless have permanent limitation on some activities.
In addition to Dr. Grossman’s care, Wheeler began seeing Dr. Gapinathan, a neurologist on August 21, 1986 when he admitted Wheeler to the hospital on complaints of leg and back pain which Wheeler said resulted from a fall in New Orleans. Dr. Gapinathan stated that a CAT-scan performed on Wheeler in the hospital in August 1986 indicated a herniated disk. Dr. Gapinathan continued to treat Wheeler for pain intermittently from August 1986 through May 3, 1987 at which time a mye-logram and another CAT-scan were performed. The tests indicated spinal stenosis with some degenerative changes, as well as a bulge at the L-4-5 region of his spine. Dr. Gapinathan did not see Wheeler again until February 16, 1988, six days before the doctor gave his deposition. Dr. Gopinathan testified Wheeler showed continued improvement during his course of treatment, and that as of Wheeler’s last visit, surgery was not indicated.
Wheeler also elicited testimony from Dr. Cornelius Gorman, vocational rehabilitation specialist, who concluded, that Wheeler has an occupational disability. Dr. Gorman felt Wheeler could not return to his occupation of bookstore manager because of strenuous activities such as lifting boxes of books and prolonged periods of standing and sitting, attendant to that job. Dr. Gorman testified his opinion was based on May 15, 1989 and June 22, 1989 interviews with Wheeler and the medical reports, though not depositions, of Wheeler’s medical experts. Under cross-examination, Dr. Gor-man admitted the tests he performed on Wheeler were wholly subjective in that the responses were completely controlled by Wheeler.
To refute Wheeler’s medical experts, NOPSI called Dr. James Williams, a local orthopaedic surgeon who examined Wheeler on June 14, 1988 at NOPSI’s request. Although Dr. Williams agreed Wheeler sustained a ruptured disk he did not feel that Wheeler’s activities would be curtailed in any manner or that Wheeler could not return to his occupation of bookstore manager. Dr. Williams thought it unusual that an individual with a ruptured disc would wait for 15 days, as Wheeler did, before seeing a doctor. The doctor further stated that Wheeler’s coughing and exercising were the more likely causes of the ruptured disc. Further, Dr. Williams stated Wheeler was not a candidate for surgery and that the disc problem would resolve with time to a full recovery. Under cross-examination, Dr. Williams acknowledged he was not a treating physician, having seen Wheeler only once. He also admitted he *1243 did not review any of the G-T scans or myelogram films on Wheeler. Moreover, Wheeler cast Dr. Williams’ testimony in a suspicious light by pointing out that the doctor’s testimony on ruptured discs in a prior suit directly contradicted his expert testimony in this case.
Next, the jury heard the testimony of Thomas Meunier, NOPSI’s vocational rehabilitation expert who told the Court that based upon Wheeler’s education, work experience and physical limitations Wheeler would be able to manage a bookstore. Meunier’s assessment of Wheeler’s employment potential came from, among other written materials, the Dictionary of Occupational Titles published by the U.S. Department of Labor. Meunier performed no tests on Wheeler.
In addition to the testimony of its witnesses, NOPSI offered Wheeler’s hospital records in connection with his hospitalization in August 1986 in which Wheeler gives a three year prior history of lower back pain on lifting heavy objects, contrary to the histories of no previous back pain given by Wheeler to his attending physicians and Dr. Williams. The records of Wheeler’s May 3, 1987 hospital admission for a myelogram contain the following statement: “I ruptured a disc in August 1986. This is a follow up exam. I have a lawsuit, they need current status of my injury.”
In light of the foregoing contradictory evidence the jury may not have believed Wheeler’s representations concerning the source, severity and duration of his injuries. Even if the jury gave greater weight to the testimony of Wheeler’s attending physicians, the time lapses in Wheeler’s medical visits for treatment and the doctors’ conflicting assessments of his condition based upon Wheeler’s statements to them do not lend credibility to Wheeler’s claims of injury and permanent disability. Additionally, the jury’s award of $10,000 for pain and suffering in addition to the medical expenses seems to indicate the jury did not believe Wheeler’s injuries were serious. We cannot say the jury abused its discretion in not awarding damages for mental anguish and permanent disability.
Finally, we address the question of damages for past and future earnings loss.
Wheeler testified that before opening his bookstore in New York in 1982 he held various jobs in restaurants, bars and retail sales. Prior to the store’s closing in March 1987, Wheeler told the Court that he, his partner and a few employees performed all sales, bookkeeping, managing, inventory and remodeling work, with him bearing the major portion of all functions plus the day to day operations. Wheeler testified his business showed a profit each year since opening with the exception of 1986 and 1987 when sales declined as a result of his inability to operate the business because of constant pain resulting from his fall on the manhole cover.
Melville Wolfson, a professor of economics, testified on the economic analysis he performed at Wheeler’s request on Wheeler’s business and personal financial status. Dr. Wolfson drew an economic picture of Wheeler’s business as a thriving concern until Wheeler’s injury. Based upon Wheeler’s salary history and the book company’s sales for the period 1982 through 1986 and Wheeler’s life expectancy of 37 years Dr. Wolfson computed, in rather complicated technical testimony, Wheeler’s past and future loss of earning capacity as between $608,874 and $279,535, explaining the variance as whether Wheeler is unemployed or retains some employment through the duration of his life expectancy. Dr. Wolfson offered similar testimony regarding profitability of Wheeler’s business. By all indications of Dr. Wolfson’s opinion of the business standing, Wheeler’s book business would have continued to show a profit but for Wheeler’s accident.
In stark contrast to Dr. Wolfson’s opinion, NOPSI’s economics expert, Dr. Kenneth Bordeaux performed a similar economic analysis on Wheeler and concluded that Wheeler’s enterprise was losing money yearly. Dr. Bordeaux stated Wheeler’s salary drawn from the business plus the yearly losses sustained doomed the business to failure. Contrary to Dr. Wolfson’s *1244 figure range of $36,000 as Wheeler’s annual salary for the period in question, Dr. Boudreaux computed the salary as $12,000 annually.
Considering this irreconcilable evidence in conjunction with the jury’s apparent disbelief as to the severity and duration of Wheeler’s injury, we conclude it was not manifestly erroneous for the jury to reject Wheeler’s claims for past and future earnings loss. Before a plaintiff can recover damages for loss of earnings, past or future, he. must show with some degree of reasonable certainty what he would have earned if he had not been involved in the accident. Wilson v. Magee, 359 So.2d 315 (La.App. 4 Cir.1978), aff’d in part, amended in part by 367 So.2d 314 (La.1979).
For the foregoing reasons the judgment of the lower court is affirmed. The costs of the appeal are assessed against Wheeler.
AFFIRMED.