PARRO, J.
 

 Un this case arising out of a dog bite, Steven Smegal appeals a judgment finding him 50% at fault in causing the incident that resulted in his injuries. The dog’s owner, Chandra Gettys, and her insurer, Louisiana Citizens Property Insurance Corporation (Citizens), answered the appeal, seeking a reduction in the general damage award and challenging the trial court’s finding that Ms. Gettys was liable or, in the alternative, that Mr. Smegal was only 50% at fault in causing the incident. For the following reasons, we affirm the judgment.
 

 FACTUAL BACKGROUND
 

 On October 18, 2006, Ms. Gettys allowed her golden retriever, Jake, to leave the house and wander about in her yard without a leash. Jake was wearing a “shock collar,” which Ms. Gettys could control with a handheld remote control. As she watched him through her kitchen window, Jake moved out of the side yard and toward the road along the front of the yard. Although she pressed the remote control to warn him to stop, he did not heed the warning “beep” or the actual shock, but continued onto and across the street. Ms. Gettys then went out in the yard and began calling Jake to return home. As she did so, a school bus was moving along the street, dropping off children. When the bus accelerated, Jake began running alongside it and eventually darted across the street in front of the bus, heading in the direction of his home. Unfortunately, Jake did not clear the bus, but was hit in his hind quarters and collapsed with serious injuries in the middle of the street.
 

 Ms. Gettys screamed and ran inside to tell her son, David, to phone the police for help. Then they both ran back toward where Jake was lying in the middle of the street. Mr. Smegal, their neighbor from across the street, also began moving down his driveway toward the injured dog. Jake could not use his back legs, but was using his front legs to raise himself up, and was then flopping back down as he attempted to move away from everyone. Ms. Gettys and David were approaching Jake slowly, holding their hands out in front of them with palms down, talking to him, and trying to Rget him to calm down and be still. Mr. Smegal also continued moving toward the dog while telling him to stay down. At some point, David got too close to Jake, and the dog snapped at him, biting his hand. David then told both Ms. Gettys and Mr. Smegal to stay back. About a minute later, when Mr. Smegal was just several feet away from the dog, Jake lurched toward him and bit him in the left ankle. Jake hung on and was dragged behind Mr. Smegal as he hopped on one leg, trying to get away. Eventually, Jake let go and, after moving a few steps further, Mr. Smegal fell to the ground at the end of his driveway. Both the dog and Mr. Smegal received immediate medical attention for their injuries, and both eventually recovered.
 

 
 *435
 
 Mr. Smegal sued Ms. Gettys and Citizens, seeking damages for the injuries he had suffered as a result of the dog bite. After a bench trial, the court found that Ms. Gettys was strictly liable for the actions of her dog and that Mr. Smegal had not provoked Jake into biting him. The court also noted that even if Mr. Smegal’s actions could be considered provocation, in which case strict liability would not be applicable, Ms. Gettys was also negligent in failing to confine and restrain Jake on a leash, as was required by parish ordinance and state law, and this negligence was a direct and proximate cause of Mr. Sme-gal’s injuries. The court awarded Mr. Smegal $19,775.94 in medical expenses, to which both parties had stipulated, and awarded $20,000 in general damages for pain, suffering, scarring, and disfigurement. The court further found that Mr. Smegal was also negligent in approaching the obviously injured dog, particularly when he knew from his training as a member of the New Orleans Police Department that the appropriate thing to do was to stay far away from an injured animal. Accordingly, he assigned 50% of the fault to Mr. Smegal.
 

 Mr. Smegal contends in this appeal that the court erred in allocating 50% comparative fault to him, because he simply underestimated the injured dog’s ability to get close enough to bite him. Ms. Gettys and Citizens answered the appeal, claiming that she was not strictly liable for Mr. Smegal’s injuries, because his actions provoked Jake to bite him. They further argue that the severely injured dog lying in the middle of Rthe street did not present an unreasonable risk of harm to Mr. Smegal, who unnecessarily placed himself in harm’s way by moving within just a few feet from Jake. They also claim that any negligence of Ms. Gettys was not the proximate cause of Mr. Smegal’s injuries, because his actions were a superseding and intervening cause of those injuries. Finally, they contend that the general damage award was excessive.
 

 APPLICABLE LAW
 

 Standard of Review
 

 A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong.
 
 Morris v. Safeway Ins. Co. of Louisiana,
 
 08-1861 (La.App. 1st Cir.9/17/04), 897 So.2d 616, 617,
 
 writ denied,
 
 04-2572 (La.12/17/04), 888 So.2d 872. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
 
 See Mart v.
 
 Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong.
 
 See Stobart v. State, through Dep’t of Transp. and Dev.,
 
 617 So.2d 880, 882 (La.1993);
 
 Moss v. State,
 
 07-1686 (La.App. 1st Cir.8/8/08), 993 So.2d 687, 693,
 
 writ denied,
 
 08-2166 (La.11/14/08), 996 So.2d 1092. If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Hulsey v. Sears,
 
 
 *436
 

 Roebuck & Co.,
 
 96-2704 (La.App. 1st Cir.12/29/97), 705 So.2d 1173, 1176-77.
 

 |sWith regard to questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect.
 
 Hidalgo v. Wilson Certified Exp., Inc.,
 
 94-1322 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record.
 
 In re Mashburn Marital Trust,
 
 04-1678 (La.App. 1st Cir.12/29/05), 924 So.2d 242, 246,
 
 writ denied,
 
 06-1034 (La.9/22/06), 937 So.2d 384.
 

 Strict Liability of Dog Owners
 

 The liability for damage caused by animals is governed by LSA-C.C. art. 2321, which, after its amendment by 1996 La. Acts, 1st Ex.Sess., No. 1, § 1, states, in pertinent part:
 

 The owner of an animal is answerable for the "damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal’s behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person’s provocation of the dog. (emphasis added).
 

 In the case of
 
 Pepper v. Triplet,
 
 03-0619 (La.1/21/04), 864 So.2d 181, the Louisiana Supreme Court reviewed the history of Article 2321 and significant jurisprudence interpreting its provisions. It noted that in
 
 Holland v. Buckley,
 
 305 So.2d 113, 119 (La.1974), the court interpreted the version of Article 2321 then in effect
 
 [1]
 
 and concluded that the owner of the animal was presumed to be at fault and could only exculpate himself by proving that the harm resulted from some independent cause not imputable to him. Applying that principle, the court imposed liability on the owner of a dog that had bitten the plaintiff, despite the lack of any evidence of the owner’s fault, |(¡because the owner did not rebut the presumption of fault created by the injury caused by the dog.
 
 Pepper,
 
 864 So.2d at 188. In a later case,
 
 Boyer v. Seal,
 
 553 So.2d 827, 834 (La.1989), the court backed away from the almost absolute liability of
 
 Holland
 
 by applying the unreasonable risk of harm principle to animals, which posits that the damage must have been caused by a vice or aspect of the thing that creates an unreasonable risk of harm to others, citing the strict liability provisions of LSA-C.C. art. 2317, as interpreted by
 
 Loescher v. Parr,
 
 324 So.2d 441, 449 (La.1976). The
 
 Boyer
 
 court stated, “Subsequent to
 
 Loescher,
 
 this court has not allowed recovery for damage by a domestic animal in the absence of proof that the injury resulted from an unreasonable risk of harm created by the animal.”
 
 Boyer,
 
 553 So.2d at 833. Reviewing this decision in the
 
 Pepper
 
 case, the court stated:
 

 Essentially, then,
 
 Boyer
 
 applied the unreasonable risk of harm principle to animals in order to limit strict liability
 
 *437
 
 against their owners because of the competing social policy that the owner of an animal should not be required to insure against all risks and because the court had been applying the same or similar principle to things and buildings.
 

 Pepper,
 
 864 So.2d at 190.
 

 The
 
 Pepper
 
 court then analyzed the 1996 amendment to Article 2321 and concluded that, although the legislature added the phrase, “which the owner could have prevented,” and did not include the term, “unreasonable risk of harm,” the court did not read that language “as an expansion of liability toward a superstrict or absolute standard” to be applied when a dog causes injury.
 
 Pepper,
 
 864 So.2d at 194. The court concluded that the amendment effected no practical change in how the courts should apply Article 2321 to dog claims, stating:
 

 [T]he legislature’s 1996 amendment of Article 2321 simply changes the law to make
 
 Holland
 
 and the strict liability doctrine no longer applicable to animals other than dogs. Furthermore, as we explained in
 
 Boyer,
 
 the unreasonable risk of harm principle represented, in effect, a limitation, albeit perhaps a partially jurisprudential one, upon the reach of strict liability, so the owner of an animal is not required to insure against all risk or loss. We detect no legislative retreat from that principle in the 1996 amendment to Article 2321.
 

 Pepper,
 
 864 So.2d at 195. The court further summarized its conclusions concerning the elements of a claim under Article 2321 as follows:
 

 | 7[T]o establish a claim in strict liability against a dog owner under La. Civ.Code art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner’s dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person’s provocation of the dog. We hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm.
 

 Pepper,
 
 864 So.2d at 184. The criterion for determining whether a defendant has created or maintained an unreasonable risk of harm is a balancing of claims and interests, a weighing of the risk and gravity of harm, and a consideration of individual and societal rights and obligations.
 
 Id.
 
 at 195-96;
 
 see also Thibodeaux v. Krouse,
 
 07-2557 (La.App. 1st Cir.6/6/08), 991 So.2d 1126, 1129.
 

 The supreme court then described the factual situation before it in the
 
 Pepper
 
 case and applied the principles of Article 2321 to the case, stating:
 

 Under the facts of this case, until the plaintiff intentionally and knowingly entered the defendant’s backyard without authority, the defendant’s dog did not present an unreasonable risk of harm to the plaintiff or the public. Securing dogs in [their yards] is what is expected of [dog owners] — it protects the dogs and it protects the innocent public. When a person who knows the security measures established by the owner, having abided by them in the past, nevertheless breaches that security, he eliminates the dog’s isolated environment and, in essence, turns the dog loose upon himself. This is not a case of a dog running down the street unfettered to prey upon the public. The owner secured the dog against contact with outsiders by enclosing the dog within the fence and, with regard to his neighbors, by notice to the plaintiffs mother, an adult in that household, that the dog had previously bitten a child that had entered the defendant’s yard through the plaintiffs yard. Secured, the dog posed
 
 *438
 
 no unreasonable risk of harm. Secured, the dog also was not subject to provocation. Secured, the dog was able to guard and protect his master’s home with no undue risk of harm to the innocent public. By breaching the security that the dog’s owner had created, the plaintiff negated that security. After balancing the various claims and interests, weighing the risk to the public and the gravity of harm, and considering individual and societal rights and obligations, we conclude that, under the facts of this case, the dog did not pose an unreasonable risk of harm. Accordingly, the plaintiff failed to establish a claim against the defendants in strict liability pursuant to Article 2321.
 

 Pepper,
 
 864 So.2d at 197-98.
 

 Comparative Fault
 

 Louisiana Civil Code article 2328 governs the application of comparative fault. It states, in pertinent part:
 

 |8A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
 

 B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
 

 The Louisiana Supreme Court analyzed the applicability of comparative fault in strict liability cases under Article 2321 in the case of
 
 Howard v. Allstate,
 
 520 So.2d 715 (La.1988).
 
 [2]
 
 The court noted that before the legislature rewrote Article 2323 establishing comparative fault, the only defenses to cases arising under Article 2321 were (1) fault of the victim, (2) fault of a third person, or (3) irresistible force, citing
 
 Rozell v. Louisiana Animal Breeders Coop., Inc.,
 
 496 So.2d 275, 279 (La.1986).
 
 Howard,
 
 520 So.2d at 718. After reviewing the language of Article 2321, the court stated:
 

 [W]e hold that comparative fault applies in cases such as this where a domesticated animal inflicts injuries for which its owner is held liable under art. 2321. It seems only fair that the damages recovered by negligent victims in dog bite cases should be reduced by their percentage of fault.
 

 Howard,
 
 520 So.2d at 718-19. The court recognized, however, that because strict liability is based on a theory of responsibility that requires no finding of negligence or culpability on the part of the defendant,
 
 *439
 
 the theory of strict liability does not lend itself to a comparison of culpability. Resolving the “conceptual difficulty in comparing the two types of legal fault,” the court stated:
 

 19[T]he most satisfactory result to this problem seems to be the principle of comparative causation. Under this principle, the factfinder compares the causal effect of the plaintiffs conduct with that of the defendant’s nonnegligent fault.... Thus, the extent to which each party contributed to the damages should be the measure by which the loss is apportioned.
 

 Howard,
 
 520 So.2d at 719.
 

 The trier of fact is owed some deference in allocation of fault, since the finding of percentages of fault is a factual determination.
 
 Duncan v. Kansas City S. Ry. Co.,
 
 00-0066 (La.10/30/00), 778 So.2d 670, 680-81,
 
 cert. dismissed,
 
 582 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001). Thus, a trier of fact’s allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review.
 
 See Stobart,
 
 617 So.2d at 882. Allocation of fault is not an exact science or the search for one precise ratio, but rather an acceptable range, and any allocation by the fact finder within that range cannot be clearly wrong.
 
 Foley v. Entergy Louisiana, Inc.,
 
 06-0983 (La.11/29/06), 946 So.2d 144, 166. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the apportionment, and then only to the extent of lowering it or raising it to the highest or lowest point respectively that is reasonably within the trier of fact’s discretion.
 
 Clement v. Frey,
 
 95-1119 (La.1/16/96), 666 So.2d 607, 611.
 

 In determining the percentages of fault, the trier of fact should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
 
 Watson v. State Farm Fire and Cas. Ins. Co.,
 
 469 So.2d 967, 974 (La.1985). These same factors guide the appellate court’s evaluation of the respective fault allocations.
 
 See Clement,
 
 666 So.2d at 611.
 

 |
 
 inGeneral Damages
 

 In the assessment of damages in cases of offenses and quasi-offenses, much discretion must be left to the trier of fact. LSA-C.C. art. 2324.1. In reviewing an award of general damages, the court of appeal must determine whether the trier of fact has abused its much discretion in making the award.
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257, 1260 (La.1993), ce
 
 rt. denied,
 
 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
 
 Id.
 
 at 1261. Only after it is determined that there has been an abuse of discretion is a resort to prior awards appropriate, and then only to determine the highest or lowest point of an award within that discretion.
 
 Coco v. Winston Indus., Inc.,
 
 341 So.2d 332, 335 (La.1976).
 

 
 *440
 
 ANALYSIS
 

 Strict Liability of Ms. Gettys
 

 Before turning to the issue of whether the court erred in allocating 50% fault to Mr. Smegal, we must determine whether, as Ms. Gettys and Citizens assert, the trial court erred in finding her strictly liable under the facts of this case. They claim that Jake did not present an unreasonable risk of harm, because he was severely injured and immobilized in the street. However, the facts reveal that, despite his serious injuries, Jake was not totally immobilized, but was able to prop himself up on his front legs and stagger or lurch in one direction or another, dragging his hind legs. Ms. Gettys testified that Jake was “moving around” by picking himself up on his front paws and then falling over to one side or the other, trying to get away from everyone who was approaching him. He managed to nip David’s hand. Then, within about a minute, he was able to move quickly enough in Mr. Smegal’s direction to bite his ankle and was strong enough to hold on while Mr. Smegal hopped six to eight feet, trying to shake him loose. After his grip on Mr. Smegal’s ankle was broken, Jake continued to flop |1Thimself away from people who were gathering, eventually moving close enough to the slope of the ditch along Mr. Sme-gal’s side of the street to slide into the ditch, where he remained until an animal control officer picked him up and carried him out. Jake’s veterinarian, Dr. Christine McDonald, testified that a severely injured dog is very likely to try to protect itself by trying to get away from the source of any threat or by biting to defend itself. She said that under circumstances in which the dog is unable to move away quickly, it is “very likely” for the dog to try to bite someone who approached.
 

 Given this evidence, the trial court had a reasonable factual basis for concluding that Jake presented an unreasonable risk of harm. His severe injuries made him more dangerous, rather than less so. Society’s strong interest in having dogs adequately restrained is demonstrated in laws and ordinances that have been passed to prevent them from running loose in the streets. Louisiana Revised Statute 3:2771 states that no person shall permit any dog in his possession or kept on his premises to run at large on any unenclosed land or to trespass on any enclosed or unenclosed land belonging to others. The “leash law” in the St. Tammany. Parish Code of Ordinances makes it unlawful for anyone to permit a dog in his possession to run loose or at large on any street, sidewalk, alleyway, highway, or any unenclosed land while not under the immediate control of a competent person and restrained by a substantial chain or leash. The ordinance further states that “electronic leashes” using an electrical charge as a means of restraint may not serve as a replacement for a tangible chain or leash.
 
 [3]
 

 Such laws and ordinances reflect the understanding that dogs can be aggressive and can seriously injure or even kill persons by repeated biting. Moreover, they can create danger simply by running about, such as when drivers swerve to avoid hitting them in the street or, as in this case, when the dog is actually hit by a vehicle. These are not inconsequential concerns. Moreover, as the facts of this case illustrate, an otherwise docile and friendly animal can become very dangerous when injured. Even the animal’s owners or those who are accustomed to treat
 
 *441
 
 ing animals are at risk for |12injury and must exercise caution when dealing with an injured or stressed dog. Therefore, the risk is high, and the possible damage is severe.
 

 Balanced against these serious concerns is the relatively simple control measure of keeping the dog leashed or fenced, which would have prevented this situation from occurring. Ms. Gettys testified that in the past, Jake had escaped from the fenced yard by digging under the fence and had also managed to pull loose when tethered in the yard. Therefore, Jake’s strong inclination to roam was known to her, and she could have anticipated that the “shock collar” might not restrain him. Although it may have been inconvenient for her to keep Jake on a leash and accompany him every time he needed to relieve himself, that inconvenience is minor when compared to the risks of allowing him to run loose. Unlike the facts presented in the
 
 Pepper
 
 case, this is a case of “a dog running down the street unfettered to prey upon the public.”
 
 Cf. Pepper,
 
 864 So.2d at 198-99. Therefore, the court did not err in finding that Jake posed an unreasonable risk of harm under the facts of this case.
 

 Ms. Gettys and Citizens further argue that she should not have been found strictly liable, because Mr. Smegal’s injuries resulted from his provocation of Jake by continuing toward him, when the dog was clearly trying to get away. The record does not support this argument. All the eyewitnesses to the incident testified that Mr. Smegal was approaching Jake slowly and quietly, trying to calm him by telling him to stay down. Ms. Gettys and David were also approaching the injured dog, talking to him and trying to get him to be still and calm down so he would not injure himself further. According to Ms. Gettys, David was bitten when he tried to go to Jake and get hold of him to keep him down. Therefore, if Mr. Smegal’s actions should have been considered provocation, his owners’ actions were equally provocative. We find no factual or legal error in the court’s conclusion that Mr. Smegal’s injuries did not result from his provocation of Jake. Therefore, strict liability for Jake’s actions was not precluded under LSA-C.C. art. 2321.
 

 |
 
 Allocation of Fault
 

 Turning to the allocation of fault, we note that the trial court stated the following in its written reasons for judgment:
 

 The court further finds that plaintiff was also at fault and bears some responsibility for his injuries. The defendant’s dog was obviously injured and in distress when plaintiff appeared in the front of his house to help. Plaintiff had the ability to avoid injury in this case by staying a sufficient distance from the dog to avoid any unpredictable actions by the dog, including an attack. Furthermore, plaintiff testified that as a longterm member of the NOPD he was trained that when dealing with an injured animal the appropriate thing to do is to stay away from the animal and call Animal Control to come pick up the animal. Plaintiff violated this tenet of his profession when he placed himself in a position where he could be injured by the dog. Therefore, the court finds that plaintiff should be apportioned fault.
 

 The court has considered the nature of the conduct of both the defendant and plaintiff and the causal relation between the conduct and the damages claimed. Having considered the extent to which each party contributed to plaintiffs damages, the court finds that both plaintiff and defendant were 50% at fault, (citation omitted).
 

 
 *442
 
 Mr. Smegal contends in this appeal that the court erred in assigning any fault to him, claiming that his encounter with Jake occurred at or near his own property, rather than on Ms. Gettys’ property, a fact which distinguishes this situation from that described in the cases that have applied comparative fault to the victim of a dog bite. Ms. Gettys and Citizens, on the other hand, contend that Mr. Smegal’s actions constituted an interceding and superseding cause of his injuries, for which the court should have assigned 100% of the fault to him.
 

 Ms. Gettys’ failure to restrain Jake by means of an enclosure or a leash was the ultimate cause of this incident. By allowing him to roam freely about the neighborhood, she exposed him to the risk of being hit by a passing vehicle and also exposed persons in the area to whatever propensities he might have for aggressive behavior, whether injured or not. As previously discussed, the risks inherent in her conduct were considerable and the means of preventing it were not burdensome, but merely inconvenient. Moreover, as the owner of the dog, she was the only person who had the ability to keep him on her property or on a leash. Yet, Mr. Smegal’s conduct was also a contributing factor to his injuries. He could have completely and easily removed 114himself from the area of danger by staying a sufficient distance away from the obviously injured and distressed dog. Instead, he approached within Jake’s reach, despite his training and knowledge as a police officer of the safe response to this dangerous situation. Either Ms. Gettys or Mr. Smegal could have completely avoided this unfortunate incident for all concerned; neither did so. Rather, both engaged in conduct that ultimately resulted in Jake’s biting Mr. Sme-gal.
 

 The fault of a third person, which will exonerate a person from his own obligation importing strict liability, is that which is the sole cause of the damage, in the nature of an irresistible and unforeseen occurrence,
 
 ie.,
 
 where the damage resulting has no causal relationship whatsoever to the fault of the owner.
 
 See Kose v. Cablevision of Shreveport,
 
 32,855 (La.App. 2nd Cir.4/5/00), 755 So.2d 1039, 1046,
 
 writ denied,
 
 00-1177 (La.6/16/00), 764 So.2d 964. That is not the case in the matter before us. While Mr. Smegal’s actions clearly brought him into the zone of danger, his actions were not the sole cause of his injuries and did not constitute an interceding and superseding cause of his injuries.
 

 Based on our review of the evidence, we find that the trial court’s allocation of 50% fault to Ms. Gettys and 50% fault to Mr. Smegal is within an acceptable range. Therefore, that allocation cannot be clearly wrong.
 

 General Damages
 

 Ms. Gettys contends the award of $20,000 in general damages to Mr. Smegal was excessive. We review the record to determine whether the trial court abused its discretion in making this award.
 

 The bite on Mr. Smegal’s left ankle resulted in immediate, severe pain. Jake hung on while Mr. Smegal tried to break his hold by hopping away. After the dog detached from his ankle, Mr. Smegal’s injured ankle gave out. He fell and crawled several more feet away from the dog, where he collapsed. The emergency personnel who first arrived at the scene took his blood pressure reading and indicated he was going into shock, so they began administering oxygen. Mr. Smegal said he was very | ^nauseous and thought he was going to pass out. When the Acadian ambulance crew arrived, they confirmed that he was in shock and continued the
 
 *443
 
 oxygen until he was stabilized. They •wrapped his foot, and his wife drove him to the emergency room of St. Tammany Hospital. There, the ankle was x-rayed, and the wound was irrigated and loosely sutured under local anesthetic. The emergency room records described Mr. Sme-gal’s injury as a large laceration on the lateral side of the left foot and several small lacerations around the ankle area. He was unable to walk or to bend his left foot. Mr. Smegal was advised that there was a high probability of infection, because the injury was caused by a dog bite. After several hours in the emergency room, he was sent home with prescriptions for antibiotics and pain medications and was told to check with his doctor after two days.
 

 He took all his medications as directed, but when he saw his family doctor two days later, the doctor examined the wound and immediately admitted him to the hospital for treatment of systemic infection that was not responding to the oral antibiotics. The attending physician noted that his ankle was “swollen, tender and red with significant redness and severe tenderness on the dorsum of the lateral foot and Achilles area. Again significant erythema, swelling and tenderness throughout this area with some drainage from the wounds.” He stayed in the hospital four days, where he received IV antibiotics and pain medication and underwent an MRI to determine whether the Achilles tendon was torn. The MRI did not show any tearing of the Achilles tendon, but did show subcutaneous and deep soft tissue edema. Mr. Smegal testified that the pain in his ankle was severe. As long as his foot was elevated, it was bearable, but as soon as he moved the ankle anywhere off the edge of the bed, it was intolerable. Because of the pain, he could not get out of bed and had to urinate in a bottle.
 

 When Mr. Smegal was released from the hospital, he was told to stay off the ankle, to keep it elevated, and to continue taking the antibiotics and pain medications. He walked with crutches for about the first three weeks after returning home. An | ^orthopedist who had treated him in the hospital eventually fitted him with a hard plastic walking boot, which allowed him more mobility. He continued to experience pain in the ankle, but it gradually diminished over a period of about three months. He has permanent scarring on the ankle and the Achilles tendon area, and still experiences some pain when the ankle gets “real cold.” He testified that the dog bite was a very traumatic experience for him.
 

 After reviewing all of the evidence concerning the nature and extent of Mr. Sme-gal’s injuries and resulting pain and suffering, we do not find that the trial court abused its discretion in awarding him $20,000 in general damages. This award was within the range that a reasonable trier of fact could assess for the effects of this particular injury to Mr. Smegal under the circumstances of this case. Therefore, the award will be affirmed.
 

 CONCLUSION
 

 For the above reasons, the judgment of September 14, 2009, is affirmed. Each party is to bear its own costs for this appeal.
 

 AFFIRMED.
 

 [1]
 

 . Before it was amended in 1996, Article 2321 stated:
 

 The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment.
 

 [2]
 

 . The version of Article 2323 in effect when the
 
 Howard
 
 case was decided stated the following:
 

 When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
 

 [3]
 

 . This provision was formerly found in Section 4-129 and was amended and renumbered in February 2009. To review the complete text of the current ordinance, found in Section 4 — 126.00, see http://www.stpgov.org/ code.