PARRO, J.
li>Troy R. Franklin, an employee of the Slidell Police Department, appeals a judgment dismissing his workers’ compensation claims of mental injury caused by mental stress. The City of Slidell answered the appeal, seeking reversal of the judge’s finding that Franklin’s supervisor’s death threat was an event of “sudden, unexpected, and extraordinary stress” related to his employment. For the following reasons, we affirm the judgment and dismiss the answer to the appeal.
BACKGROUND
Franklin has been employed by the Sli-dell Police Department (the Department) since 1991. On September 3, 2009, he filed a disputed claim for compensation, alleging post-traumatic stress caused by a workplace incident with his supervisor. Franklin stated in his claim that on the morning of September 5, 2008, Captain Robert Jacobs had threatened to kill him, Jacobs walked into the booking room where Franklin was typing a report and said, in front of several other employees, that he was feeling suicidal and was ready to take some other folks with him. Speaking directly to Franklin, Jacobs said he would be first on the list. Franklin alleged that as a result of that incident, he has experienced adjustment disorder, depression, anxiety, acute distress disorder, and post-traumatic stress disorder. He claimed he was denied medical benefits and workers’ compensation indemnity payments, and his request for a second opinion from a doctor of his choice was ignored.
The City of Slidell (the City) disputed the claims, noting that Jacobs and Franklin had long-standing personal and professional conflicts that had resulted in one or more verbal altercations between them prior to this incident. The City further argued that Franklin continued to work with Jacobs after this supposedly crucial incident, finally leaving voluntarily and claiming mental disability about nine months after the event.
After a trial on the merits, the workers’ compensation judge (WCJ) entered judgment, finding that Franklin had proved by clear and convincing evidence that the death threat constituted a “sudden, unexpected, and extraordinary stress” related to his |semployment. However, she found that he had not carried his burden of proving by clear and convincing evidence that any mental injury or illness he was experiencing was “a result of’ that single event, noting that, “[t]he evidence presented showed that there was continued harassment by claimant’s supervisor both on and off the job for many months thereafter which could have been the cause of the mental health condition.” Therefore, his claims were dismissed. The judgment *260 dismissing his claims was signed on December 2, 2011. Franklin filed this pro se appeal, and the City answered the appeal, seeking reversal of the WCJ’s finding that Franklin had proved by clear and convincing evidence that the death threat constituted a “sudden, unexpected, and extraordinary stress” related to his employment.
APPLICABLE LAW

Standard of Review

In workers’ compensation cases, as in other civil cases, the manifest error or clearly wrong standard governs the appellate court’s review of facts. Bass v. National Maint. Corp., 95-0367 (La.App. 1st Cir.12/15/95), 665 So.2d 782, 783. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Moss v. State, 07-1686 (La.App. 1st Cir.8/8/08), 993 So.2d 687, 693, writ denied, 08-2166 (La.11/14/08), 996 So.2d 1092. If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may |4not reverse those findings, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Smegal v. Gettys, 10-0648 (La.App. 1st Cir.10/29/10), 48 So.3d 431, 435-36; see also Guidry v. M-I Drilling Fluids Co., 01-2693 (La.App. 1st Cir.11/8/02), 835 So.2d 830, 831-32.

Mental Injury caused by Mental Stress

In order to receive workers’ compensation benefits for mental injury caused by mental stress related to his employment,[1] a claimant must satisfy the requirements of LSA-R.S. 23:1021(8)(b) and (d), which state:
(b) Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
[[Image here]]
(d) No mental injury or illness shall be compensable under either Subpara-graph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Under the statute, a mental injury is com-pensable, depending upon the type of stress that triggers the injury. Partin v. Merchants & Farmers Bank, 01-1560 *261 (La.3/11/02), 810 So.2d 1118, 1125. The nature of the stress itself is to be evaluated, rather than the stress being evaluated from the employee’s perspective. Id. The legislature intended to restrict recovery under subsection (8)(b) to those mental injuries that result from stresses which, by their nature, are sudden, unexpected, and extraordinary in the usual course of employment in that working environment. Id. The claimant cannot merely show that a mental injury is related to the general conditions of employment or to incidents which have occurred over an extended period of time. Tranchant v. Environmental Monitoring Serv., Inc., 00-1160 (La.App. 5th Cir.12/13/00), 777 So.2d 516, 519.
1 sThe mental injury must be demonstrated by clear and convincing evidence and, to be compensable, must be diagnosed by a licensed psychiatrist or psychologist according to specific enumerated criteria. Dangerfield v. Hunt Forest Products, Inc., 10-1324 (La.App. 1st Cir.3/25/11), 63 So.3d 214, 219. To prove a matter by clear and convincing evidence means a party must demonstrate that the existence of a disputed fact is highly probable, much more probable than its nonexistence. Our Lady of Lake Reg’l Med. Ctr. v. Matthews, 06-1584 (La.App. 1st Cir.9/26/07), 971 So.2d 354, 357. Our supreme court has cautioned reviewing courts to analyze claimed disabilities caused by mental conditions carefully and with utmost caution, recognizing the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned. Charles v. South Cent. Indus., 96-0883 (La.11/25/96), 683 So.2d 706, 709; Dangerfield, 63 So.3d at 219.
ANALYSIS
As a preliminary matter, the City has brought to our attention that Franklin’s appellate brief in this case fails to comply -with Rule 2-12.4 of the Uniform Rules of the Courts of Appeal, because it does not include the necessary statement of jurisdiction, does not make any argument regarding the purported issues for review, does not include any references or citations to the record, and does not cite any authorities to support the arguments made. Nevertheless, in light of Franklin’s pro se status in this appeal, this court will consider the merits of his case, despite the improper form of his appellate brief.[2] See Putman v. Quality Distrib., Inc., 11-0306 (La.App. 1st Cir.9/30/11), 77 So.3d 318, 320.
Franklin states that he did not receive any in-patient treatment or hospitalization for his mental problems and argues that his employer disregarded the workers’ compensation laws by failing to notify him concerning denial of benefits and by denying his right to a second opinion from a physician of his choice. He also contends his employer made misrepresentations and seeks the imposition of a statutory penalty for | (¡those actions. Franklin states the WCJ erred by assuming that the continued harassment from Jacobs may have been the cause of his mental injury, rather than recognizing that this ongoing conflict simply delayed his recovery from the mental injury that he sustained when Jacobs threatened to kill him. Franklin also claims the WCJ made a factual error by stating that his claim was not filed until after Jacobs moved into the apartment complex of Franklin’s friend, Diane Mob-ley, when in fact, he filed a claim with the Department on January 16, 2009, and Ja *262 cobs did not move into that complex until May 2009. Finally, he claims the City should be held responsible for providing him with counseling, as he had requested in January 2009.
We note first that, contrary to the City’s arguments in its answer to the appeal, our review of the evidence reveals that a reasonable factual basis exists for the WCJ’s finding that Franklin proved by clear and convincing evidence that the death threat constituted a “sudden, unexpected, and extraordinary stress” related to his employment. Moreover, this finding is reasonable in light of the record reviewed in its entirety. The record shows that from the time he began his employment with the Department, Franklin was harassed by Jacobs. However, although Franklin was understandably irritated by this behavior, it did not cause him any significant or constant anxiety, and he was able to handle these situations. When Jacobs walked into the booking room and threatened to kill him, this was the first encounter that occurred before other witnesses. From this point on, Franklin was hyper-aware of Jacobs, fearing that he might actually follow through on his threat. Franklin reported the incident, and Jacobs was moved to another job in a building some distance away from the corrections facility. Yet, even though Jacobs’ job duties no longer required him to have any contact with Franklin, he continued to return to Franklin’s office at odd intervals. Franklin interpreted these unexpected visits as Jacobs’ way of showing him that, in spite of the Department’s order, Jacobs could still get to him at any time.
Every workplace has its share of employment-related stress. Yet, it is highly unusual and extraordinary for a supervisor to threaten to kill an employee. No matter 17what level of previous harassment or tension exists in the workplace, an unprovoked death threat from a supervisor could never be anticipated by an employee. Therefore, we agree with the WCJ that the death threat constituted a “sudden, unexpected, and extraordinary stress” related to Franklin’s employment, fulfilling one of the requirements of LSA-R.S. 23:1021(8)(b).
However, the WCJ determined that the record did not support, by clear and convincing evidence, the conclusion that Franklin’s mental injury was the “the result of’ that sudden, unexpected, and extraordinary stress. She stated in written reasons:
The evidence presented was not “clear and convincing” that the mental conditions complained of were a result of the September 5, 2008 threat. The evidence presented showed that there was continued harassment by claimant’s supervisor both on and off the job for many months thereafter which could have been the cause of the mental health condition. Some of the medical records referred to “job stressors.” The medical records alone did not clarify this question of “as a result of’ by “clear and convincing evidence.”
[[Image here]]
Accordingly, although the [Office of Workers’ Compensation] Court was extremely sympathetic to the evidence of harassment and the threat by Captain Jacobs, the law is extremely strict and does not allow recovery in workers’ compensation.
Based on this finding by the WCJ, the direct causation element of LSA-R.S. 23:1021(8)(b) was not met. We have reviewed the evidence to determine whether this finding is manifestly erroneous.
Franklin’s first meeting concerning the threat and his reaction to it was with an employee assistance counselor, Ann Wil *263 der, about three months after the incident. She recommended that Franklin be evaluated by a psychiatrist and that Jacobs be kept away from him. The psychiatrist who evaluated him for the Department, Dr. Harold M. Ginzburg, agreed that Franklin and Jacobs needed to be separated at work. However, he diagnosed Franklin with a “relational problem” and suggested Franklin may be exaggerating his symptoms in order to obtain a medical retirement.
In April 2009, Franklin sought treatment from his primary care doctor, Dr. Jose LeFran. Dr. LeFran diagnosed him with post-traumatic stress disorder, recommended that he not return to work, and suggested he follow up with a psychiatrist. Franklin |8met with Dr. Julie Ceasar, a psychiatrist, in May; she diagnosed him with adjustment disorder, post-traumatic stress disorder, sleep apnea, and workplace stressors. She prescribed Depacote, but Franklin did not want to take it, because it would negatively interact with the weight-loss medicine he was taking. Therefore, Dr. Ceasar recommended he seek treatment with someone else.
Franklin began seeing various social workers and psychiatrists at Ochsner Health System and participated in regular group and individual counseling sessions. Because Jacobs continued to show up unexpectedly at his office, Franklin stopped working on June 16, 2009. He met with Dr. Larry Warner regularly during the following months. On September 21, 2009, Dr. Warner sent a letter to the Department, advising that he was treating Franklin for adjustment disorder, mixed type, with depression and anxiety, along with acute stress disorder, “both as a direct result of his current job-related stress.” He recommended that Franklin remain away from work while undergoing treatment for an undetermined time. Upon receipt of this letter, the Department put Franklin on catastrophic leave with full pay and benefits.[3]
In early 2010, Franklin’s treating physicians released him . for administrative duties, and he asked to return to work in some capacity. He was sent to another psychiatrist, Dr. Alan James Klein, to be evaluated for his ability to return to work. In his report on August 20, 2010, Dr. Klein concluded that Franklin had “a serious psychiatric disorder, quite possibly of psychotic proportions, with evidence of paranoid thought processing that is likely alcohol induced.” He further stated that Franklin was “not fit for duty in a law enforcement agency, either as a Correctional Officer or in performing administrative duties.” Based on this report, Franklin then applied for disability retirement; the Department sent him to Dr. Lawrence D. Wade for evaluation of his disability status. Dr. Wade criticized Dr. Klein’s conclusions, diagnosed Franklin with an adjustment disorder, and found him fit for duty. The City then sent Franklin for another evaluation by Dr. Cary D. Rostow. On May 17, 2011, Dr. Rostow concluded | gthat he found no compelling evidence that would indicate that Franklin was suffering a major mental condition that would disallow his ability to work as a police officer. Finally, on July 1, 2011, Franklin returned to work as a correctional officer with the Department.
The doctors’ reports are full of references to “job-related stress,” “depression and issues on the job,” “long-standing conflicts at work,” etc. Having examined the *264 evidence, we agree that the evidence tended to show that Franklin’s mental problems were the result of the September 5, 2008 threat. However, the evidence did not point so strongly toward that incident as the cause of his mental problems that it was highly probable that his mental injury was “the result of’ that single event. From the evidence, it appears equally likely that his mental problems pre-existed this event and were merely exacerbated by it. Therefore, the WCJ did not err in finding that the evidence did not meet the standard of being “clear and convincing” evidence that Franklin’s mental injury was caused by the death threat.
CONCLUSION
For the above reasons, we affirm the December 2, 2011 judgment. All costs of this appeal are assessed to Troy Franklin.
AFFIRMED; ANSWER TO APPEAL DISMISSED.
HUGHES, J., dissents with reasons.

. Such a claim is commonly known as a "mental/mental” claim. Partin v. Merchants & Farmers Bank, 01-1560 (La.3/11/02), 810 So.2d 1118, 1122.

. Franklin was represented by counsel from the period leading up to the filing of his disputed claim for compensation through the trial. His attorney withdrew from representation after the judgment was rendered.

. This status was only available for one year. When it was discontinued, Franklin began to use up his sick leave.