DRAKE, J.
| ¡.This survival action involves a claim by the survivors of Tommy Lloyd White, Sr. (Mr. White) against Entergy Gulf States Louisiana, L.L.C. (Entergy). The lawsuit asserts damages based upon Mr. White’s contraction of and death from mesothelio-ma, a long-latency disease resulting from exposure to asbestos-containing products (ACPs). Mr. White’s surviving spouse and adult children (Plaintiffs[1]) initially filed suit against numerous defendants, including manufacturers and distributors of the ACPs, Mr. White’s previous employer, and owners of the premises where Mr. White was allegedly exposed to the ACPs. However, all defendants settled with Plaintiffs or were dismissed prior to trial, except Entergy, General Electric Company (G.E.), CBS Corporation/Westinghouse Electric Corporation (CBS), and Foster Wheeler, L.L.C.
After a two-day bench trial, the district court ruled in favor of Plaintiffs and awarded general damages in the sum of $3,800,000 ($8.8 million) for Mr. White’s survival claim. Entergy now suspensively appeals, asserting two assignments of error. For the following reasons, we affirm.

*767
FACTS AND PROCEDURAL HISTORY

From 1955 to 1974, Mr. White worked as an operator for Entergy at an indoor facility in East Baton Rouge Parish, Louisiana, known as the Louisiana Station. The Louisiana Station, originally built in the 1930s, was a steam, turbine-powered, electricity generating facility, which also provided steam to the nearby Exxon Refinery. As an operator, Mr. White’s primary objective was to ensure that the equipment of the Louisiana Station was running correctly. During Mr. White’s eight-hour shifts at the Louisiana Station, he maintained and performed minor maintenance on machinery and equipment, including boilers, turbines, and support Ispumps. During the performance of his duties on Entergy’s premises, Mr. White was exposed to asbestos dust and fibers.
On July 1, 2011, Mr. White was diagnosed with mesothelioma at the age of seventy-nine. Mesothelioma is a fatal cancer of the lining of the lungs; it is almost always associated with exposure to ACPs. Mesothelioma is a long-latency disease, meaning that it does not manifest itself until anywhere from twenty to forty years after significant exposure to asbestos.[2] See Terrance v. Dow Chem. Co., 06-2234 (La.App. 1 Cir. 9/14/07), 971 So.2d 1058, 1062, writ denied, 07-2042 (La.12/14/07), 970 So.2d 534. On July 25, 2011, Mr. White began hospice care in his home, where he remained until his death on August 8, 2011.
After Mr. White’s death, his surviving spouse and adult children sued a number of defendants, seeking damages for injuries Mr. White sustained as a result of his exposure to ACPs during his employment with Entergy. The plaintiffs sought to recover general and special damages through a survival and wrongful death action, pursuant to Louisiana Civil Code articles 2315.1 and 2315.2.[3] | ¿Entergy then filed a cross-claim and third party demand against various other defendants, asserting fault, negligence, and strict liability among those parties.
Prior to trial, the parties stipulated that the case would proceed pursuant to Mr. White’s survival action only against Enter- *768 gy.[4] Following trial, the district court ruled in favor of Plaintiffs and awarded general damages in the sum of $3.8 million for Mr. White’s survival claim. The court granted Foster Wheeler’s motion for summary judgment. The court also ruled in favor of G.E. and CBS, dismissing, with prejudice, Entergy’s third-party demands against those parties. The court rendered judgment on June 27, 2013, and issued no written reasons for ruling. Entergy’s appeal followed.

LAW AND DISCUSSION

A court of appeal may not overturn a judgment of a trial court unless there is an error of law or a factual finding that is manifestly erroneous or clearly wrong. Morris v. Safeway Ins. Co. of Louisiana, 03-1361 (La.App. 1 Cir. 9/17/04), 897 So.2d 616, 617, writ denied, 04-2572 (La.12/17/04), 888 So.2d 872. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after | ¿reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993); Moss v. State, 07-1686 (La.App. 1 Cir. 8/8/08), 993 So.2d 687, 693, writ denied, 08-2166 (La.11/14/08), 996 So.2d 1092. If the trial court’s factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Smegal v. Gettys, 10-0648 (La.App. 1 Cir. 10/29/10), 48 So.3d 431, 435. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable. Robinson v. North American Salt Co., 02-1869 (La.App. 1 Cir. 6/27/03), 865 So.2d 98, 105, writ denied, 03-2581 (La.11/26/03), 860 So.2d 1139. Where there are two permissible views of the evidence; a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Dubuisson v. Amclyde Engineered Products Co., Inc., 12-0010 (La.App. 1 Cir. 12/31/12), 112 So.3d 891, 895.
With regard to questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Hidalgo v. Wilson Certified Exp., Inc., 94-1322 (La.App. 1 Cir. 5/14/96), 676 So.2d 114, 116. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. In re Mashburn Marital Trust, 04-1678 (La.App. 1 Cir. 12/29/05), 924 So.2d 242, 246, writ denied, 06-1034 (La.9/22/06), 937 So.2d 384.
| fSurvival Action
In its first assignment of error, En-tergy contends that the district court *769 erred as a matter of law in basing the damages award in this matter on injuries that are not compensable in a survival action. Entergy correctly states that the plaintiffs have no wrongful death claim against Entergy for damages for their own anguish and distress due to Mr. White’s illness and death. Therefore, to the extent the district court considered evidence beyond the scope of the survival claim and used that evidence to support the award, Entergy alleges the district court committed error.
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim’s death. The survival action permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. It is in the nature of a succession right. On the other hand, the wrongful death action does not arise until the victim dies, and it compensates the beneficiaries for their own injuries, which they suffer from the moment of the victim’s death and thereafter. La. C.C. arts. 2315.1 and 2315.2; McGee v. A C And S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770, 779-80 (citing Taylor v. Giddens, 618 So.2d 834, 840 (La.1993)). In addition, a wrongful death claim is like a loss of consortium claim insofar as it clearly compensates the beneficiaries for their own injuries, separate and distinct from the primary victim’s injuries. McGee, 933 So.2d at 780 (citing Landry v. Avondale Indus., Inc., 03-0719 (La.12/3/03), 864 So.2d 117, 126).
In this case, the parties stipulated that the case proceeded pursuant to Mr. White’s survival action only. After rendering judgment, the district court did not issue written reasons for ruling; however, the district court did give oral reasons for the judgment on the merits, stating:
|7The court has carefully reviewed this matter together with the quantum in these types of cases. In the First Circuit across Louisiana, and in some other jurisdictions, these are difficult cases unlike an auto accident that is sometimes instantaneous, covering but a few seconds. But the evidence shows the length of the suffering and then the death. The survival claim in this matter is particularly heartfelt by the adult children and through their testimony, the pain of their mother who had been married all of her adult life to Mr. White.
The court finds defendants to be liable to the plaintiffs in the full and true sum of three million eight hundred [thousand] dollars. Judgment to be signed accordingly.
Entergy argues that the district court’s statement, that Mr. White’s survival action was “particularly heartfelt by the adult children and through their testimony, the pain of their mother,” demonstrates the error of the district court. Entergy contends- that the explanation of the damage award shows that the court based Mr. White’s survival damages on Plaintiffs’ own anguish and distress over Mr. White’s illness and death, which, Entergy argues, are injuries that are not compensable in a survival action.
Aside from the statement by the district court that Mr. White’s survival claim was “particularly heartfelt by the adult children and through their testimony, the pain of their mother,” there is no evidence to support Entergy’s contention that the district court considered evidence beyond the scope of the survival claim to support its award of $3.8 million. All of the evidence and testimony presented at trial focused solely on Mr. White’s own pain and suffering throughout the course of his illness and *770 subsequent death. Although the court made “kind statements” from the bench regarding the heartfelt nature of the case and Plaintiffs’ pain in losing their husband and father, there is no indication that the district court was attempting to compensate the plaintiffs for their own injuries, suffered as a result of Mr. White’s death. This assignment of error is without merit.

IsDamages

The district court awarded Mr. White $3.8 million in general damages.[5] In its second assignment of error, Entergy argues that this damage award is an abuse of the district court’s discretion. Entergy contends that Mr. White survived for less than six weeks following his mesothelioma diagnosis and that, prior to his diagnosis, he led a physically active life. Entergy also argues that during the final weeks of his life, Mr. White was surrounded by his family, was provided with 24-hour care, reported that he was pain free to his caregivers, and slipped into a coma several days before his death. Entergy contends that at the time of his death, Mr. White told his wife he was not afraid of dying.
The survival action permits recovery only for the damages suffered by the victim from the time of the injury to the moment of death. The elements of damage for the survival action are pain and suffering, loss of earnings, and other damages sustained by the victim up to the moment of death.[6] La. C.C. art. 2315.1; In re Brewer, 05-0666 (La.App. 1 Cir. 5/5/06), 934 So.2d 823, 826, writ denied sub nom, In re Med. Review Panel for Claim of Brewer, 06-1290 (La.9/15/06), 936 So.2d 1278. The trier of fact is given much discretion in the assessment of damages. La. C.C. art. 2324.1. On appellate review, damage awards will be disturbed only when there has been a clear abuse of that discretion. Terrance, 971 So.2d at 1070 (citing Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993)).
The record reflects that prior to his mesothelioma diagnosis on July 1, 2011, Mr. White suffered from asbestos-related problems as early as 2005. Pleural | acalcifications compatible with asbestos exposure were found on Mr. White’s lungs in 2005, which is one of the first signs of asbestosis.[7]
Dr. Steven Speeg, an expert in internal medicine and family practice, had been Mr. White’s primary care physician since 1991. At trial, Dr. Speeg testified that Mr. White suffered symptoms of mesothelioma— chest pain, shortness of breath, fatigue, coughing, and other breathing problems— for years prior to his diagnosis. Dr. Speeg stated that he thought Mr. White’s shortness of breath was due to heart problems or chronic obstructive pulmonary disease (COPD), but Dr. Speeg testified that in retrospect, Mr. White suffered from asbestosis that ultimately progressed into meso- *771 thelioma.[8] Dr. Speeg testified that in early 2011, Mr. White showed symptoms that his mesothelioma was strengthening, including loss of energy, muscular pain in his chest, pain radiating from his shoulder through his jaw, and tumors in one of his shoulders. After Mr. White began hospice care in his home on July 25, 2011, Dr. Speeg continued his care of Mr. White as his hospice physician. Dr. Speeg testified that Mr. White was miserable at the end of his life as he lay dying of mesothelioma and “starving for breath” due to the lack of oxygen in his body, despite being on an oxygen machine. Dr. Speeg treated Mr. White’s pain with morphine, due to the aggressive nature of the cancer and lack of treatment available.
Dr. Victor Roggli, an expert in pathology, medicine, and mesothelioma, reviewed pathology reports of Mr. White. Dr. Rog-gli testified that a 2005 biopsy of Mr. White’s prostate and a 2011 biopsy of Mr. White’s pleura showed evidence of the presence of mesothelioma. Dr. Roggli further testified that Mr. White began suffering from mesothelioma when he first experienced symptoms that could be hnrelated to mesothelioma, including when he first started having breathing problems.
Mr. White’s neighbor, Arthur Kleinpeter, testified that in the last year of his life, Mr. White, an avid gardener, exhibited breathing problems and shortness of breath, which made it increasingly hard for Mr. White to remain active outdoors.
Mr. White’s daughter, Lucy, testified that her father was debilitated, thin, and frail when she returned home to help care for her father prior to his diagnosis. As a registered nurse, Lucy took over caring for her mother, who needed round-the-clock care, as well as her father. Lucy testified that after her father began chemotherapy[9] in an attempt to combat the mesothelioma, he suffered dizziness, confusion, and nausea. Lucy testified that prior to his death, her father also suffered from fluid retention in his abdomen and lower extremities, had swollen, bleeding testicles, mouth sores, problems chewing food, problems eating, weight loss, and declining platelet, red, and white blood cell counts. Mr. White was placed on oxygen, hospitalized, and ultimately placed on hospice care. Lucy also testified that Mr. White was given morphine for pain. Lucy stated that her father was a “stoic man” who prided himself on not complaining of pain; nevertheless, Lucy testified that her father was “hurting.”
Mr. White’s sons, Tommy, Jr., Fred, and Bill, were also present during their father’s illness. They testified that Mr. White’s level of activity dropped off significantly prior to his diagnosis and that he could not complete tasks that he had done in the past. Tommy, Jr. testified that he could tell his father experienced pain as he attempted to eat and swallow food. Bill testified that because of the tough nature of his father, he could not get an honest answer from Mr. White when it came to his pain.
_JjjDorothy White, Mr. White’s widow, testified that her husband was “hurting when he was sick,” but that he “didn’t talk too much about that” because “[h]e didn’t want you to know how much he was suffering.” When asked how she knew her husband was hurting, Dorothy responded, “[w]hen you live with a man for 61 years, you know.”
*772 The record reflects that before his diagnosis, Mr. White suffered from loss of energy, chest pain, fatigue, shortness of breath, and pain and that Mr. White showed signs of mesothelioma as early as 2005. After his diagnosis, Mr. White continued to experience those symptoms, as well as fluid retention in his lungs, abdomen, and lower extremities, bleeding testicles, nausea, diarrhea, fever, severe weight loss, mouth sores, tumors, and confusion before his death. Mr. White was also hospitalized, took a round of chemotherapy, endured fluid draining procedures, was placed in hospice care, and slipped into a coma. The district court heard all of the evidence and made its award. While the award is arguably on the high end of the general damage spectrum, we cannot conclude that the district court abused its vast discretion. Accordingly, Entergy’s assignment of error in this regard lacks merit. See Terrance, 971 So.2d at 1071.

DECREE

Considering the foregoing opinion, the judgment of the district court is affirmed. All costs of this appeal are assessed to the defendant/third party plaintiff-appellant, Entergy Gulf States Louisiana, L.L.C.
AFFIRMED.
WILL CRAIN, concurs with written reasons attached.
GUIDRY, J. dissents for the reasons assigned by PARRO, J.
RHP, dissenting with written reasons.

. The original plaintiffs were Mr. White’s surviving spouse, Dorothy Carter White, individually and on behalf of her late husband’s estate, and Mr. White’s adult children, Lucy White, Tommy Lloyd White, Jr., Frederick White, and William White.

. Mesothelioma is a cancerous growth arising from the pleura and spreading diffusely over the surface of the lung, forming a firm grayish sheath over it, and frequently invading both lungs and the chest wall; symptoms include cough, chest pain, and breathing difficulty; mesothelioma occurs in people occupationally exposed to asbestos with a latency period of 20 to 40 years, and with incidence increasing when the person is a smoker; few patients survive beyond two years. Tumor occurs less frequently in the peritoneum and other organs. Attorney’s Illustrated Medical Dictionary, M28 (Ida G. Dox, Gilbert M. Eisner, June L. Melloni, and B. John Melloni, eds., West 1997).

. Louisiana Civil Code article 2315.1 is the survival action, which allows a decedent’s family to recover on his behalf the damages a decedent experiences prior to his death that he would be entitled to recover, had he lived. The article states, in pertinent part:
A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
Article 2315.2 is the wrongful death action, which allows a decedent’s family to recover their own damages as a result of the decedent's death. The article states, in pertinent part:
A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

. Additionally, counsel for Entergy made an oral motion in limine to exclude evidence beyond proof of survival damages. The district court referred the motion to the merits.

. The parties stipulated that Mr. White's medical bills totaled $162,995.48.

. We also note that general damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1 Cir.), writs denied, 605 So.2d 1373 and 1374 (La.1992). The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. Jenkins v. State ex rel. Dept. of Transp. and Development, 06-1804 (La.App. 1 Cir.8/19/08), 993 So.2d 749, 767, writ denied, 08-2471 (La.12/19/08), 996 So.2d 1133.

. Asbestosis is a disease characterized by diffuse thickening and scarring of lung tissue (pulmonary fibrosis) that is directly related to the duration and intensity of exposure to asbestos dust. Attorney’s Illustrated Medical Dictionary, A77 (Ida G. Dox, Gilbert M. Eisner, June L. Melloni, and B. John Melloni, eds., West 1997).

. Dr. Speeg did not diagnose Mr. White with asbestosis prior to his death.

. Mr. White received a dose of Alimta, chemotherapy with normal pre-medications for nausea, which include Decadron steroid and usually an antiemetic like Zofran.